# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALLAN WAYNE SHANK,

        Defendant-Appellant.

FOR PUBLICATION
November 17, 2015
9:10 a.m.

No. 321534
Presque Isle Circuit Court
LC No. 12-092763-FC

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

BORRELLO, J.

Defendant, Allan Wayne Shank, appeals by delayed leave granted[1] his sentence following his guilty pleas to felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) MCL 750.227b. The trial court sentenced him as a fourth-offense habitual offender.[2] MCL 769.12. The trial court sentenced Shank to serve 12 to 25 years' imprisonment for his felon in possession and a consecutive term of two years' imprisonment for his felony-firearm conviction. In consideration of our recent ruling in *People v Steanhouse*, ___Mich App ___; ___ NW2d ___ (2015), we remand the matter to the trial court for resentencing.

## I. FACTS

Police officers received disturbing information that Jerry Hilliard, a prison inmate, had sent an eight year old child a gift and card through Shank, who had been in prison with Hilliard and who has previous convictions of accosting minors for immoral purposes. During the investigation, officers discovered that Hilliard had requested that Shank take a photograph of the child posing in only a necklace. While executing a warrant, officers found a Winchester pump .22 caliber rifle in Shank's hall closet. Officers also found evidence that Shank had sent Hilliard a photograph of what appeared to be a pregnant seven year old child and discovered in Shank's

---

[1] *People v Shank*, unpublished order of the Court of Appeals, entered June 12, 2014 (Docket No. 321534).

[2] This status increased Shank's possible maximum term of imprisonment to life imprisonment. MCL 769.12(1)(b); MCL 750.227b(1).

photo album a photograph of a 5-year-old girl exposing her vaginal area, which Shank denied belonged to him.

Shank pleaded guilty to felon in possession and felony-firearm, and the prosecution dropped a charge of possession of child sexually abusive material. The sentencing guidelines recommended a minimum sentence of 7 to 46 months' imprisonment for Shanks' felon in possession conviction. The trial court decided to depart upward, instead sentencing Shank to 12 to 25 years' imprisonment. It gave several reasons for its departure, including that Shank did not have much rehabilitative potential since he had been frequently incarcerated for reoffending, violated probation, parole, and received misconduct citations in prison. The trial court also relied on the concerning nature of Shank's noncriminal behavior. The trial court explained that Shank was "assisting his prison mates in making contact with young children outside the prison system. He's starting to groom children in spite of having served these long sentences . . . . There's been just no rehabilitation at all."

## II. STANDARDS OF REVIEW

This Court, in *Steanhouse*, considered the impact of *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) on departure sentences following our Supreme Courts' opinion in *Lockridge*. *Steanhouse* holds that pursuant to *Lockridge*, this Court must review a defendant's sentence for reasonableness. *Lockridge*, ___ Mich at ___; slip op at 2, 29, citing *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). Hence, when the trial court departs from the applicable sentencing guidelines range, this Court will review that sentence for reasonableness. *People v Lockridge*, ___ Mich ___; ___; slip op at 29. However, as stated in *Steanhouse*, "The appropriate procedure for considering the reasonableness of a departure sentence is not set forth in *Lockridge*." *Steanhouse*, ___ Mich App at ___; slip op at 35. After discussion of the approaches Michigan Appellate courts should employ when determining the reasonableness of a sentence, this Court adopted the standard set forth by our Supreme Court in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

## III. PRINCIPLE OF PROPORTIONALITY.

Under *Milbourn*, "a given sentence [could] be said to constitute an abuse of discretion if that sentence violate[d] the principle of proportionality, which require[d] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636; *Steanhouse*, ___ Mich App at ___; slip op at 37. As such, trial courts were required to impose a sentence that took "into account the nature of the offense and the background of the offender." *Milbourn* at 651. As stated in *Milbourn*:

> Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended rang in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the

extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. *Milbourn*, at 659-660.

As set forth in *Steanhouse*, "factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense, (2) factors not considered by the guidelines . . . (3) factors that were inadequately considered by the guidelines in a particular case. *Steanhouse*, at ___ slip op at 38. (Internal citations omitted).

In this case, the trial court did not have the benefit of our Supreme Court's decision in *Lockridge* or this Court's decision in *Steanhouse*. Because of this fact, the trial court's sentence departure centered on the then existing substantial and compelling reason standard which was overturned by *Lockridge*, ___ Mich at ___; slip op at 29. Accordingly, in accordance with this Court's decision in *Steanhouse*, we remand this matter to the trial court for a *Crosby*[3] hearing. "The purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the error." *People v Stokes*, ___ Mich App ___ ; ___ NW2d ___; (2015) slip op at 11. Also, pursuant to *Stokes*, defendant is provided with an opportunity to avoid resentencing by promptly notifying the trial judge that resentencing will not be sought. *Stokes*, ___ Mich App at ___; slip op at 11-12, quoting *Lockridge*, ___ Mich at ___; slip op at 35.

Accordingly, we remand the matter to the trial court to follow the *Crosby* procedure outlined in *Lockridge*. Because defendant may be sentenced to a more severe sentence, defendant "may elect to forgo resentencing by providing the trial court with prompt notice of his intention to do so. If notification is not received in a timely manner," the trial court shall continue with the *Crosby* remand as explained in *Lockridge* and *Stenhouse*. See generally, *Stokes*, ___ Mich App at ___; slip op at 12.

We remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra

---

[3] 397 F 3d 103 (CA 2 2005).